IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KATHLEEN ADAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-cv-03098-M |
| | § | |
| SAFE HOME SECURITY INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Safe Home Security Inc.'s Rule 12(b)(6) Motion to Dismiss. [ECF No. 12]. For the following reasons, the Motion is **DENIED IN PART** and **GRANTED IN PART**.

I. **Factual and Procedural Background**

Plaintiff Mary Kathleen Adams brings this action against Safe Home Security Inc. for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Texas Debt Collection Act, Tex. Fin. Code Ann. § 392 ("TDCA"). The Complaint [ECF No. 1] alleges that Plaintiff purchased a contract for home security services from Defendant, and that following the expiration of the contract, Plaintiff began to receive phone calls from Defendant, attempting to collect on a debt claimed to be past due. [*Id.* ¶¶ 14–16]. These calls were all placed to Plaintiff's cell phone and most originated from the phone number (860) 740-5378. [*Id.* ¶ 11]. Plaintiff claims that each call followed a similar pattern. After Plaintiff answered the call, there would be a pause of several seconds before a live representative spoke. [*Id.* ¶ 13]. Plaintiff claims that she informed Defendant that these were erroneous charges, for dates after Plaintiff terminated the contract, and Plaintiff demanded, several times, that Defendant stop calling. [*Id.* ¶¶ 18–20]. Nevertheless, Defendant made at least 20 calls to Plaintiff's cell phone following Plaintiff's demand. [*Id.* ¶¶ 6, 14–15].

## II. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It does not need to include "detailed factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Instead, it must provide a factual basis "to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court will accept all well-pleaded factual allegations as true "with all reasonable inferences drawn in the light most favorable to the plaintiff." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). However, the Court will not credit "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

## III. Analysis

### a. Plaintiff Has Sufficiently Pleaded a Violation of the TCPA

Section 227(b) makes it unlawful for any person "to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service for which the called party is charged for the call." 47 U.S.C. § 227(b). A violation occurs if: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

The Motion to Dismiss focuses on Defendant's alleged use of an automatic telephone dialing system ("ATDS"). An ATDS is "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a). "[C]ourts have noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129 (W.D. Wash. 2012) (internal quotation omitted). As a result, a plaintiff can plead facts about the details and circumstances of the calls, and a "description of the

calls as including dead-air time is sufficient to establish use of an [ATDS]." *Cunningham v. TechStorm, LLC*, No. 3:16-cv-02879-M, 2017 WL 721079, at *3 (N.D. Tex. Feb. 23, 2017) (Lynn, C.J.). Plaintiff alleges that each of the phone calls she received began with a pause of several seconds. [Complaint ¶¶ 13, 20]. This is adequate to plead the use of an ATDS.

### b. Plaintiff's Complaint Remains Sufficient Even After *ACA Int'l v. Federal Commc'ns Comm'n*

Defendant contests that a mere pause only suggests the use of a predictive dialer—a device that automatically dials stored customer phone numbers. It argues that, as a matter of law, these devices no longer qualify as an ATDS following the D.C. Circuit's recent decision in *ACA Int'l v. Federal Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018), which invalidated a 2015 FCC Order regarding the scope of the TCPA.

The D.C. Circuit's decision was a consolidated appeal from the D.C. and Seventh Circuits and is binding on the Court because when petitions to review an FCC decision filed in multiple circuits are consolidated and assigned to a specific court of appeals, the decision is binding in all circuits. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017).

#### i. The Impact of *ACA Int'l v. Federal Commc'ns Comm'n*

The FCC issued guidance in 2003 and 2008 that a predictive dialer qualified as an ATDS. A 2003 Report and Order reasoned that ATDSs reflected the general concern against devices that had "the *capacity* to dial numbers without human intervention." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 Order"), 18 F.C.C. Rcd. 14014, 14092 ¶¶ 131–32 (2003) (emphasis in original). A 2008 Declaratory Ruling affirmed this interpretation and reasoning. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2008 Order"), 23 F.C.C. Rcd. 559, 566 ¶ 12 (2008). "[I]n light of precedent," the FCC reaffirmed this position in a 2015 Declaratory Ruling and Order. *In the Matter of Rules &*

*Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2015 Order"), 30 F.C.C. Rcd. 7961, 7970 ¶ 10, 15 (2015). In *ACA Int'l*, however, the D.C. Circuit invalidated the 2015 Order because its interpretation of the TCPA was overly expansive and its definition of an ATDS was made without reasoned decision-making. 885 F.3d 687, 700–01 (D.C. Cir. 2018).

### ii. The Invalidity of the FCC's Prior Orders

On its face, *ACA Int'l* only referenced the 2015 Order, and courts have disagreed about the continued applicability of the FCC's prior interpretations. *See Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 621–22 (N.D. Iowa 2019) (comparing courts that have held that the 2003 and 2008 Orders did and did not still apply). However, Plaintiff does not contest that the D.C. Circuit's opinion also invalidated the 2003 and 2008 Orders.

This position is reasonable as the FCC's 2015 Order was based on the reasoning of its earlier decisions, which had "already twice addressed the issue." 2015 Order, 30 F.C.C. Rcd. at 7973–74 ¶¶ 10–15. The 2015 Order "essentially ratifie[d]" those prior decisions. *ACA Int'l*, 885 F.3d at 701. The D.C. Circuit's ruling invalidating the 2015 Order inherently overturned the same reasoning in the 2003 and 2008 Orders. *See Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 936 (N.D. Ill. 2018) (declining to apply the 2003 and 2008 Orders because they are "inextricably intertwined" with the 2015 Order "insofar as they, too, addressed the capacities a predictive dialer must have to qualify as an ATDS." ) Without any applicable FCC interpretations in place, the Court must independently interpret the statute to determine the scope of the definition of an ATDS and whether it applies to predictive dialers.

### iii. 47 U.S.C. § 227(a) No Longer Applies to Predictive Dialers

Under 47 U.S.C. § 227(a):

(1) The term "automatic telephone dialing system" means equipment which has the capacity—

      (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

      (B) to dial such numbers.

The parties contest what the clause "using a random or sequential number generator" modifies. There are three possible interpretations. The first is that it modifies both the numbers stored and the numbers produced. An ATDS thus must store or produce randomly or sequentially generated numbers. The second interpretation is that the clause only modifies the production of telephone numbers, and the device must either store phone numbers, of any kind, or produce phone numbers with a random or sequential number generator. Finally, the third interpretation is that the clause only modifies the verb "called" and specifies the manner in which the device dials the numbers.

It is unsettled among courts which of these three interpretations should govern. Plaintiff points to the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), which applied the second interpretation. The statute would then cover devices that merely dialed any stored number, including predictive dialers like the one Defendant argues is being alleged in this action. While that understanding is not meritless, the Court respectfully disagrees with the Ninth Circuit and finds that the first interpretation is correct.

The Court interprets terms based on "their ordinary and natural meaning and the overall policies and objectives of the statute." *United States v. Orellana*, 405 F.3d 360, 365 (5th Cir. 2005). "If the statute is ambiguous, [the Court] may look to the legislative history or agency interpretations for guidance." *Id.* Ultimately, an interpretation of a statute must "comport[] with a fundamental principle of statutory construction—common sense." *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 364 (5th Cir. 2005).

Under these principles, the third interpretation of the statute is implausible. If the goal were to describe how numbers are called, the clause would more naturally be a part of § 227(a)(1)(B), which specifically discusses the dialing of numbers. Furthermore, "[a]nytime

phone numbers are dialed from a set list, the database of numbers must be called in some order—either in a random or some other sequence." *ACA Int'l*, 885 F.3d at 70.  The statute does not need to specify that the numbers will be dialed in some random or sequential order.  Thus, this interpretation creates superfluous language and is an unreasonable reading of the statute.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotations omitted).

Of the two remaining interpretations, the clause more readily refers to both the storage and generation of numbers.  When "there is a serial list followed by modifying language that is set off from the last item in the list by a comma, this suggests that the modification applies to the whole list and not only the last item." *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 223 (5th Cir. 2007).  Thus, "using a random or sequential number generator" modifies both "to store" and "to produce."

This interpretation also avoids a grammatically incongruous sentence structure.  If the clause only modified the production of telephone numbers, then the statute could be rewritten as follows:

> (1) The term "automatic telephone dialing system" means equipment which has the capacity—
>
>> (A) to store; or
>>
>> (B) to produce telephone numbers to be called, using a random or sequential number generator; and
>
> to dial such numbers.

This would define an ATDS, in part, as a device that has the capacity "to store . . . and to dial such numbers."  This interpretation does not make sense because, as a transitive verb, "to store" requires an object.  *See Cruz v. Abbott*, 849 F.3d 594, 599 (5th Cir. 2017) (holding that a transitive verb

requires an object and a clause modifying that object must be read in conjunction with the transitive verb).

The FCC's pre-2003 understanding confirms that an ATDS must both store and produce numbers that are randomly or sequentially generated and not merely store any numbers. In 1992, the FCC noted that the TCPA did not apply to speed dialing or call forwarding "because the numbers called are not generated in a random or sequential fashion." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8777 ¶ 47 (1992). Further, the legislative history of the TCPA describes that it "permit[s] the FCC to allow businesses to call consumers with whom the business had an 'established business relationship.'" S. REP. 102-177, 4. To automatically call prior business customers, the device would have to be able to store those customers' phone numbers, making it unlikely that Congress was attempting to ban that feature. Accordingly, § 227 does not prohibit the use of predictive dialers as they fall outside the definition of an ATDS.

### iv. Plaintiff Has Adequately Pleaded the Use of a Device That Is Both a Predictive Dialer and an ATDS

Defendant argues that Plaintiff's allegations only suggest the use of a predictive dialer because the calls were targeted for the purpose of collecting a past due debt and not susceptible to being created by a random or sequential number generator. However, nothing precludes Defendant from having used a device that can both randomly or sequentially generate numbers *and* act as a predictive dialer. The statute only requires that the device have the current capacity to store or produce randomly or sequentially generated numbers—not that the calls in question are actually related to that function.

Plaintiff has alleged a set of facts—the pause before a live representative joins the call—that is sufficient to allege the use of an automated calling machine of some kind. It is equally plausible that those automated features include a predictive dialer and the capacity to store or

produce numbers from a random or sequential number generator. *See Gonzalez v. Ocwen Loan Servicing, LLC*, No. 5:18-cv-00340-OC-30PRL, 2018 WL 4217065, at *7 (M.D. Fla. Sept. 5, 2018) ("[A] conclusion that the device [the defendant] used is a predictive dialer does not exclude the possibility that the device is also an ATDS."). The proliferation of telemarketers, which the TCPA was intended to combat, implicates both features. Without the benefit of discovery, it is impossible for Plaintiff to fully understand the current capacity of Defendant's device, and this uncertainty is the exact reason courts have not held plaintiffs to the highest pleading standards in TCPA cases. Accordingly, Defendant's Motion to Dismiss Plaintiff's claim under § 227 is **DENIED.**

### c. Plaintiff Has Adequately Pleaded One of Her Two Claims Under the Texas Debt Collection Act

The TDCA prohibits the use of multiple unlawful means to collect a debt. "[A] plaintiff must allege that: (1) the debt at issue is a consumer debt; (2) the defendant is a 'debt collector' within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as [a] result of the defendant's wrongful act." *Snowden v. Wells Fargo Bank, N.A.*, No. 3:18-cv-1797-K-BN, 2019 WL 587304, at *7 (N.D. Tex. Jan. 18, 2019), report and recommendation adopted, No. 3:18-cv-1797-K, 2019 WL 586005 (N.D. Tex. Feb. 12, 2019). Specifically, Plaintiff has alleged violations of §§ 392.304(19) and 392.302(4) of the TDCA, which prohibit the use of false representations and harassing conduct, respectively.

#### i. Fraudulent Debt Collection Under § 392.304(19)

Section 392.304(19) prohibits "using any other false representation or deceptive means." Tex. Fin. Code Ann. § 392.304(19). As Defendant correctly notes, Texas law requires "an affirmative statement" that is fraudulent. *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 363 (5th Cir. 2014). Plaintiff's only claimed fraudulent statements in the Complaint are "implicit

misrepresentations" caused by the act of making the phone calls, which implied that Defendant had the lawful ability to continue contacting Plaintiff despite the TCPA's protections against these types of harassing calls. [Complaint ¶ 38]. The Complaint lacks any allegation of an affirmative false statement, and in any event, Plaintiff has chosen not to respond to Defendant's Motion to Dismiss this claim. Defendant's Motion to Dismiss Plaintiff's claim under § 392.304(19) of the TDCA is **GRANTED**.

### ii. Harassment Under § 392.302(4)

Section 392.302(4) prohibits a debt collector from oppressing, harassing, or abusing a person by "causing a telephone to ring repeatedly or continuously or making repeated or continuous telephone calls, with the intent to harass a person at the called number." Tex. Fin. Code Ann. § 392.304(19). "[C]ourts generally require both a great volume of phone calls and extenuating circumstances." *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 362 (5th Cir. 2014). The key is whether the intent to harass "may be inferred from the frequency, pattern, or substance of the telephone calls . . . or the place to which the calls were made." *Enis v. Bank of Am.*, N.A., No. 3:12-cv-0295-D, 2013 WL 1721961, at *5 (N.D. Tex. Apr. 22, 2013).

Defendant argues that the alleged 20 calls over a series of up to five months are insufficient. However, Federal Rule of Civil Procedure 9(b) allows the intent to harass to be pleaded generally, which Plaintiff has done. [Complaint ¶ 22]. Further the quantity of calls is not dispositive, and a description of the circumstances surrounding the calls and their unwarranted nature are also relevant. *See McCartney v. CitiFinancial Auto Credit, Inc.*, No. 4:10-cv-424, 2010 WL 5834802, at *3 (E.D. Tex. Dec. 14, 2010), report and recommendation adopted, No. 4:10-cv-424, 2011 WL 675386 (E.D. Tex. Feb. 16, 2011) (finding a complaint was sufficient when it alleged that the defendant called repeatedly at home and work, even though plaintiff had informed the defendant that he had retained counsel and that he could not take personal calls at work).

Plaintiff has pleaded that she received *at least* 20 calls from the Defendant. [Complaint ¶ 20]. Further, these were only the calls following her demand that Defendant stop. [*Id.*]. And Plaintiff alleges that the calls were extreme enough to cause "emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of her telephone services, [and] loss of cellular phone capacity." [*Id.* ¶ 23]. "There is no bright line rule as to the specific amount or pattern of calls sufficient to raise a fact issue regarding the intent to annoy, abuse, or harass . . ." *Enis*, 2013 WL 1721961, at *5. Drawing all reasonable inferences in favor of Plaintiff, there is a sufficient factual basis to allege that Defendant has plausibly engaged in a course of harassing conduct through this series of repeated calls. Accordingly, Plaintiff has sufficiently pleaded a violation of § 392.302(4) of the TDCA, and the Defendant's Motion to Dismiss this claim is **DENIED**.

## IV.   Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**. It is **ORDERED** that Defendant's Motion to Dismiss Plaintiff's claims for a violation of § 227(b) of the TCPA and § 392.304(19) of the TDCA is **DENIED**, but Defendant's Motion to Dismiss Plaintiff's claim for a violation of § 392.302(4) of the TDCA is **GRANTED**.

**SO ORDERED**.

July 30, 2019.

_____
BARBARA M. G. LYNN
CHIEF JUDGE